No. 19,012.

MELISSA THOMPSON, *Appellant,* V. WILLIAM H.
MILLIKIN, *Appellee.*

SYLLABUS BY THE COURT.

1. ACTION—*To Set Aside Gas Lease and Deed—Procured by
Fraudulent Representations—Land Conveyed, a Homestead—
Laches.* Plaintiff sued for an accounting for oil taken from
lands which she claimed belonged to her, and sought to avoid
the effect of an oil-and-gas lease on the lands executed by
herself, and also a deed conveying her interest in the land;
first, on the ground that they were obtained by false and
fraudulent representations of the defendant; second, that the
land was occupied by herself and children as a homestead,
that her husband who had abandoned her never joined in the
conveyances. The pleadings show she learned of the fraud
soon after the conveyances were executed but delayed bring-
ing her action for six and one-half years thereafter for the
purpose of securing proof to establish the fact of fraud and
to discover whether in fact her husband was living or dead.
*Held:* (*a*) The cause of action so far as it rested upon fraud
and misrepresentation is barred by her laches and delay.
(*b*) The cause of action for the recovery of the homestead is
not barred by delay, and plaintiff is not estopped from asserting
her homestead rights on the ground that she represented
herself to be a widow, as the pleadings allege that defendant
acquired his interest under the lease and the deed with the
same knowledge of facts concerning the absence of plaintiff's
husband that she possessed at the time the instruments were
executed, and it was error to render judgment against plain-
tiff on the leadings.

2. SEVEN YEARS UNEXPLAINED ABSENCE—*Presumption of Death
—Prima Facie Only.* The unexplained absence of a person
for more than seven years is *prima facie* evidence of his
death, but not conclusive evidence. The presumption is one
of fact, subject to be controlled by the actual facts proved.
Before the presumption obtains at all there must be a lack
of information concerning the absentee on the part of those
likely to hear from him, after diligent inquiry extending to
the places where information is likely to be obtained.

Appeal from Chautauqua district court; ALLISON T.
AYRES, judge. Opinion filed October 10, 1914. Re-
versed.

*H. E. Sadler,* of Sedan, *J. B. Tomlinson,* and *Charles D. Shukers,* both of Independence, for the appellant.

*W. H. Sproul,* of Sedan, and *S. H. Piper,* of Independence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: On June 6, 1910, the plaintiff commenced this action in the district court against William H. Millikin, alleging in her petition that she is the legal and equitable owner of lots five (5) and six (6), section six (6), township thirty-five (35), range twelve (12) east, in Chautauqua county; that she has been such owner for more than ten years, during which time the defendant unlawfully entered upon and removed therefrom crude petroleum rock oil of the value of $100,000, the same being part of the real estate.

The answer admitted that the defendant entered upon the land, and in 1904, 1905 and 1906 developed and produced oil therefrom, but alleged that he had permission and authority to do so; first, by virtue of an oil-and-gas lease executed February 19, 1903, by the plaintiff to L. A. Lockwood, and duly assigned by Lockwood to the defendant; second, that on the 12th day of January, 1904, plaintiff executed and delivered to one G. W. Goss a deed to the real estate in controversy, thereby conveying all her right, title and interest therein; that Goss in turn, on March 10, 1904, had by deed conveyed the land to other persons, and that on April 5, 1904, defendant had procured an oil-and-gas lease from the owner of the fee title; that the rentals under the lease had been paid to the plaintiff until she sold her interest to Goss, and thereafter the rentals and royalties had been paid to the owner of the fee title.

The reply consisted of a general denial and a plea of confession and avoidance in which it was alleged that at the time plaintiff executed the lease to Lockwood and the deed to Goss the premises in controversy were occupied by herself and family as a homestead,

and that her husband, Eugene F. Thompson, never joined in the execution of either the deed or the lease. The reply further alleged that the lease and the deed were obtained by false and fraudulent representations on the part of Millikin. As an excuse for not having brought her action sooner she further alleged that soon after the making of the deed to Goss "plaintiff began to suspect that she had been overreached and defrauded by said Millikin and gradually became persuaded thereof"; that she immediately consulted an attorney, who advised her that the lease and deed could be set aside and that she could recover from Millikin for the oil taken from the land provided "she could find evidence to show either that the same were obtained by said Millikin by fraud or that her husband was still living at the date of the deed to said Goss, . . . and plaintiff thereupon with all diligence and at great expense proceeded to search for such evidence, but did not succeed in finding the same until shortly before the beginning of this action."

When the case was called for trial, and at the conclusion of the opening statement of plaintiff's counsel, the court rendered judgment in defendant's favor upon the pleadings and statement. From the judgment the plaintiff appeals.

There are many questions argued in the briefs which in our view of the case it will not be necessary to consider. All rulings relating to the cause of action based upon fraud and misrepresentation may be eliminated. The action was not commenced until more than seven years after the plaintiff had executed the lease to Lockwood and six and one-half years after the execution of the deed to Goss. She knew she had been defrauded, but waited during all this time for the purpose of procuring evidence to establish that fact and to discover whether her husband was in fact alive when the conveyances were executed. She admits receiving $1000, the consideration mentioned in the deed, and that she

has retained and used the same, but offers in her reply to repay the amount or to credit the same as the court may deem equitable and just. On the face of the pleadings it is clear that the fraud she relies upon was discovered long before the action was brought. She is therefore precluded by laches from asserting her claims in this respect. In the case of *Trust Co. v. McIntosh*, 68 Kan. 452, 75 Pac. 498, it was ruled in the syllabus that "relief on the ground of fraud will not be granted to one who does not seek it promptly after discovery of the fraud, and who, with knowledge of the fraud, retains the fruits of the transaction it induced." (Syl. ¶ 1. See, also, *Donaldson v. Jacobitz*, 67 Kan. 244, 72 Pac. 846; *Rogers v. Lindsay*, 89 Kan. 180, 131 Pac. 611; *Sell v. Compton*, 91 Kan. 151, 136 Pac. 927.) The defendant, therefore, was entitled to judgment on the pleadings so far as the cause of action is founded upon alleged fraud and misrepresentation.

Her claim with respect to the homestead is that the husband is still living, and that as he never joined in the execution of either conveyance they are absolutely void. This court has held that oil-and-gas leases are an alienation of the homestead. In *Palmer v. Parish*, 61 Kan. 311, 59 Pac. 640, it was said:

"A lease contemplating such an occupancy so far interferes with the use of the homestead that the joint consent of the husband and wife is necessary to its validity. (*Land Co. v. Gas. Co.*, 43 Kan. 518, 23 Pac. 630; *Gas. Co. v. Land Co.*, 54 Kan. 533, 38 Pac. 790.)" (p. 315.)

(See, also, *Pilcher v. A. T. & S. F. Rld. Co.*, 38 Kan. 516, 16 Pac. 945; *Gas Co. v. Ralston*, 81 Kan. 86, 105 Pac. 430; and Thornton, The Law Relating to Oil and Gas, 2d ed. § 57, p. 79.)

The plaintiff's husband left her some fifteen years before the suit was brought. In the opening statement of counsel it was said that Mrs. Thompson had been in possession of the premises all the time; that her hus-

band had abandoned her some nine years before the execution of the lease to Lockwood; that the last letter she had received from her husband was in 1895; that in 1909 she learned of his whereabouts and sent him some pictures of the children and received the register's receipt card thereon acknowledging the package sent, but received no letter from him and heard nothing from him further. It was also admitted in the opening statement that the plaintiff informed Mr. Millikin of these facts at the time he bought the Lockwood lease, and further that the deposition of Goss was on file showing that at the time of the delivery of her deed to him he knew that her husband had abandoned her and had been gone for more than seven years and had not been heard from, and that he got this information from the plaintiff. It is said that the trial court in sustaining the motion for judgment on the pleadings and opening statement took the view that seven years' absence was not merely *prima facie* evidence of death but conclusive evidence, so that the relation of husband and wife had ceased, and the land thereby lost its homestead character and she was permitted to dispose of it as she pleased without the joint consent of the husband, even though he was, in fact, still alive. We think the court erred if it held that the unexplained absence of the husband for more than seven years is conclusive evidence of his death. The seven years presumption is one of fact, subject to be controlled by the facts proved in the case. (Jones on Evidence, § 62.) Before the presumption obtains there must be a lack of information concerning the absentee on the part of those likely to hear from him after diligent inquiry extended to all places where information is likely to be obtained. (*Modern Woodmen v. Gerdom*, 72 Kan. 391, 82 Pac. 1100, affirmed in 77 Kan. 401, 94 Pac. 788; *Renard v. Bennett*, 76 Kan. 848, 93 Pac. 261; *Caldwell v. Modern Woodmen*, 89 Kan. 11, 130 Pac. 642.)

Thompson v. Millikin.

The defendant relies upon the doctrine of equitable estoppel. In *Shay v. Bevis,* 72 Kan. 208, 83 Pac. 202, it was held that equitable estoppel may be interposed against a homestead right, but we can not agree with counsel that the plaintiff is precluded from now asserting that her husband is still living simply because she described herself as a widow in the deed. In some of the cases cited by defendant the married woman was guilty of fraud because she falsely represented herself to be single. Here the plaintiff says she informed the grantee in the deed and the defendant Millikin all she knew about the facts concerning her husband's absence. No willful misrepresentation or fraud is shown. So far as the pleadings and the statement of counsel at the trial show, the defendant's rights were acquired with the same knowledge of the facts that the plaintiff possessed. Authorities are also cited in support of the proposition that the lessor is estopped by the lease from denying that he had any estate in the land when the lease was executed, but we think that principle has no application. The plaintiff is not estopped to claim that the land was a homestead since the lessee knew that the premises were so occupied and knew the facts with respect to the absence of the husband. Upon a full trial of the facts in this case it may develop that the plaintiff is estopped by her conduct. Our decision merely goes to the effect that the trial court erred in rendering judgment on the pleadings in favor of the defendant.

It is argued that the plaintiff can not maintain the action in her own name; that if she could not convey without her husband joining, she can not sue without his being joined either as plaintiff or defendant. It requires the consent of the wife freely given joining with that of her husband to alienate the homestead. A conveyance by either spouse alone is not valid nor effectual for any purpose whatever. (*Moore v. Reaves,* 15 Kan. 150.) It has been repeatedly held that the

homestead character of the premises is not changed by
the desertion of the husband. In *Moore v. Dunning*,
29 Ill. 130, it was said:

"This place still continued the home and residence of
the husband, as well as his family, at least, until it is
proved that he had acquired a home and a settlement
elsewhere, and this the law can never assume he has
done. The presumption is that he continues a wan-
derer, without a home, until he returns to his duty and
his family." (p. 135.)

In *Withers v. Love*, 72 Kan. 140, 83 Pac. 204, it was
ruled in the syllabus:

"So long as the wife is living nothing the husband
alone can do or suffer to be done will estop either of
them from claiming the hometsead."

As we have seen, the plaintiff alleges that when the
lease and deed were executed she was in possession
and that the defendant as well as Goss knew of the
homestead character of the land and the facts respect-
ing the husband's desertion.

The court rightly refused plaintiff a jury trial. It
was an equitable action for an accounting, and neither
party was entitled to a jury as a matter of right.

The judgment will be reversed and the cause re-
manded for further proceedings in accordance with the
opinion.