No. 21,637.

H. P. WHITE, *Appellant,* v. HUEY R. GREEN and FRANCES MAE GREEN, *Appellees.*

SYLLABUS BY THE COURT.

ORAL OIL AND GAS LEASE—*Incorporeal Hereditament—Within Statute of Frauds.* An oil and gas lease granted to the lessee, his heirs and assigns, the right to explore for oil and gas for a period of five years and as long thereafter as oil and gas were produced, with the right to the possession of so much of the surface as was needed for the laying of pipe lines, the erection of tanks, buildings, and other structures for the production, care, and transportation of the product, the lessor to receive one-eighth of the oil obtained and a certain amount for the gas taken from the premises, and it was provided that if a well was not drilled as specified the lessee was to pay $30 for each ninety-day period of delay. Other stipulations gave the lessee the right to remove machinery, and provided for a surrender of the lease on

certain conditions. *Held,* that the agreement purports to transfer an incorporeal hereditament, and, being oral, was within the statute of frauds and, therefore, invalid.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed July 6, 1918. Affirmed.

*C. W. Spencer,* and *J. E. Brooks,* both of Sedan, for the appellant.

*J. A. Ferrell,* of Sedan, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Plaintiff appeals from the judgment of the trial court sustaining a demurrer to his petition.

The substance of the allegations of the petition was that the defendant, Huey R. Green, orally agreed to execute an oil and gas lease to the plaintiff of certain land upon the terms and conditions expressed in a printed form of lease, a copy of which was attached to and made a part of the petition; that the reason defendant did not execute the written lease at that time was because he had not yet received his deed to the land, but he promised to do so after his deed was received; and that defendant received his deed, but refused to execute the lease in accordance with his oral promise, although plaintiff offered the cash payment required under their contract. It was also alleged that plaintiff, relying upon the defendant's oral promise, had leased other lands on three sides of defendant's land, thus making defendant's land especially valuable for oil and gas purposes. Alleging willingness to perform on his part, plaintiff asked that the defendant be required to execute the lease in accordance with the oral contract. The printed form of lease mentioned contained the following language:

"Party of the first part for and in consideration of the sum of One Hundred & Twenty Dollars in hand well and truly paid, . . . does grant, demise, lease and let unto the said second party, his heirs, executors, administrators, successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations and structures thereon, to produce and take care of said products, all that certain tract of land," etc.

Another paragraph read:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them

is produced from said land by the party of the second part, his heirs, administrators, executors, successors or assigns."

Then followed several clauses providing that the lessor should have one-eighth of the oil obtained, also for the terms of payment for all gas taken from the premises, and also that a well should be drilled within one year, and, if not done, second party was to pay $30 for each ninety-day period of delay.

Other provisions were:

"The party of the second part shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. The party of the second part shall not be bound by any change in ownership of said land until duly notified of any such change, either by notice in writing duly signed by the parties to the instrument of conveyance, or by receipt of the original instrument of conveyance, or duly certified copy thereof. . . . The party of the second part, its heirs or assigns shall have the right at any time, on the payment of——— Dollar to the part———of the first part———heirs or assigns to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine," etc.

It was contended by the defendants, and evidently held by the court, that the agreement sought to be enforced, not being in writing, was within the statute of frauds, and unenforceable. The plaintiff contends that the lease is a mere license to explore for oil and gas; that it did not assign or grant any interest in or out of lands; and that a writing was not essential to its validity. Reference is made to a number of cases in which it was held that certain oil and gas leases were not to be treated as ordinary leases of land and did not convey an interest or estate in land. Several forms of lease have already been examined by this court, and each was interpreted in the light of its own provisions. It has been said that such leases are in a class by themselves, and are in the nature of a license coupled with an interest. (*Dickey v. Brick Co.,* 69 Kan. 106, 76 Pac. 398.) In *Rawlings v. Armel,* 70 Kan. 778, 79 Pac. 683, an exploration lease was held not to convey an estate in land unless mineral was found and produced. It has been held, too, that a mechanic's lien will not attach to an interest acquired in lands by a lessee of an ordinary oil and gas lease. (*Oil Co. v. McEvoy,* 75 Kan. 515, 89 Pac. 1048; *Phillips v. Oil Co.,* 76 Kan. 783, 92 Pac. 1119.) On the other hand, it has been ruled that the right

transferred by such a lease constituted an alienation of a homestead, and that the consent of husband and wife was necessary to its validity. (*Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640; *Thompson v. Millikin,* 93 Kan. 72, 143 Pac. 430.) A lease granted, conveyed, and warranted to the lessee, his heirs and assigns, the right to drill for oil and gas, to construct pipe lines and buildings necessary for the production and transportation of the product, and provided that a well should be drilled within two years or the lessee should pay $80 annually until it was done, that one-tenth of the oil produced should be paid to the lessor and certain payments made if gas was found, and that if no well was drilled within ten years the lessee was to reconvey the property to the lessor. It was held that under such an instrument the lessee acquired an interest in the stratum of oil and gas which thereafter became subject to taxation, incumbrance, or conveyance. This holding was based mainly on the language of the writing, which expressly conveyed and warranted the premises described, and a provision for reconveyance of the property if a well was not drilled within the prescribed time. (*Gas Co. v. Oil Co.,* 83 Kan. 136, 109 Pac. 1002.) In other cases where it was claimed that the writing effected a severance of the mineral from the land and created an estate which was subject to taxation, it has been held that the terms of the lease did not operate as a transfer of the title to the minerals. (*Finch v. Beyer,* 94 Kan. 525, 146 Pac. 1141; *Hover v. McNeill,* 102 Kan. 492.)

Although the right granted herein may not have accomplished a severance of the mineral, nor arise to the dignity of what is termed an estate in land, it did give the lessee an exclusive and assignable right to the use of a portion of the land for a period of at least five years. With it went the right to use so much of the surface for laying pipe lines, erecting buildings, tanks, stations, and other structures as was necessary to accommodate the oil and gas taken from the wells which the lessee contracted to drill. Thus the lessee has, not only the right to drill for mineral, but he has the absolute right to possession of a part of the land on which to care for the mineral produced. This is a right which no one can take from him during the period of the lease if the required conditions are performed. As will be observed, the provisions of the grant

White v. Green.

were extended, not only to the heirs and assigns of the lessee, but also to those of the lessor. While the lease may not have given title to the mineral in the land, it did give something in connection with the land which was capable of being inherited. In a number of cited cases it has been designated as an incorporeal hereditament. It ·is· a grant in the nature of an easement, and it is something which may be inherited, and which the law and good public policy require shall be committed to writing. The statute provides that a party cannot be charged upon an agreement for the sale of lands, tenements or hereditaments, or any interest in or concerning them, unless it is in writing duly signed by the party to be charged. (Gen. Stat. 1915, § 4889.) It has been held that a contract to execute an oil and gas lease giving the mere right to explore for oil and gas, and if either is found, to produce and sever, is within the statute of frauds. It was said:

"While the court has held that an oil and gas lease of the kind under consideration does not constitute a conveyance, will not support a mechanic's lien, does not operate as a grant and severance of mineral in place, and creates no estate proper in the land itself, it does create an incorporeal hereditament. A contract for the sale of hereditaments, whether incorporeal or corporeal, is within the sixth section of the statute of frauds." (*Robinson v. Smalley*, 102 Kan. 842, 843, 171 Pac. 1155.)

The lease herein involved is at least an incorporeal hereditament, and, not being in writing, is unenforceable. (See, also, 10 Ann. Cas. 100.)

The judgment of the district court is affirmed.