**FERGUSON et ux. v. STEEN, Tax Assessor, et al. (No. 467.)**

Court of Civil Appeals of Texas. Waco. March 10, 1927.

Rehearing Denied April 7, 1927.

**1. Taxation** ⬤➡63—**Royalty interest under oil leases held right or privilege "belonging" or "appertaining" to land, and "real property" within taxing statute (Rev. St. 1925, art. 7146).**

One-sixteenth royalty interest under "88 producer's special Texas form" leases, providing that lessees shall deliver to lessors one-eighth of oil produced and saved *held* a right or privilege "belonging" or "appertaining" to the land, and "real property," within Rev. St. 1925, art. 7146, providing that real property for purpose of taxation shall include all the rights and privileges belonging or in any wise appertaining to land.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Appertain; First and Second Series, Belong—Belonging; Real Property.]

**2. Mines and minerals** ⬤➡48—**Oil and gas in place are "minerals" and "realty," subject to ownership, severance, and sale.**

Oil and gas in place are "minerals" and "realty," subject to ownership, severance, and sale while imbedded in sands or rocks beneath the earth's surface.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

**3. Mines and minerals** ⬤➡74—**Taxation** ⬤➡63 —**Oil leases held to sever minerals from land to vest in lessees seven-eighths of minerals and to leave to lessors one-eighth subject to sale and separate taxation (Rev. St. 1925, art. 7146).**

"88 producer's special-Texas form" oil and gas leases, providing that lessees deliver to

lessors the equal one-eighth part of all oil produced and saved, *held* to sever all of such minerals from the land and to vest in lessees seven-eighths of the minerals so severed, and to leave in lessors a separate estate in fee simple of a one-eighth interest in the minerals so severed, in addition to estate in the surface of the land, which one-eighth was subject to sale and separate taxation, in view of Rev. St. 1925, art. 7146, defining real property for the purpose of taxation to include rights and privileges belonging or appertaining to land.

**4. Taxation ⬥362—Where landowners did not include their royalty interest under oil lease in rendering land, tax assesser could assess interest (Rev. St. 1925, arts. 7190, 7192, 7193).**

Under Rev. St. 1925, arts. 7190, 7192, 7193, authorizing the tax assessor to assess real and personal property in case of failure to obtain statement thereof for taxation, where the owners of land did not render their royalty interest under oil and gas leases in statement to the tax assessor, the tax assessor had the right to assess the royalty interest.

**5. Taxation ⬥467—Where landowners did not include their royalty interest under oil leases in rendering land, board of equalization could add it to statement (Rev. St. 1925, arts. 7206, 7212).**

Under Rev. St. 1925, arts. 7206, 7212, enumerating the duties and powers of the board of equalization, where owners of land did not include the value of their royalty interest under oil and gas leases in statement to the tax assessor, the board had right to correct the statement by adding thereto the value of the royalty interest.

Appeal from District Court, Limestone County; J. R. Bell, Judge.

Suit by H. F. Ferguson and wife against R. W. Steen, as tax assessor of Limestone County and others. From a judgment in favor of defendants, plaintiffs appeal. Affirmed.

N. T. Stubbs, of Mexia, for appellants.
Reed & Cannon, of Groesbeck, and Robt. M. Lyles, of Austin, for appellees.

STANFORD, J. Suit by H. F. Ferguson and wife against R. W. Steen, as tax assessor, and H. F. Kirby, as county judge, J. M. Kennedy, J. R. Dulaney, Earl Leach, and Ed Andrews, as county commissioners, and W. A. Robbins, as tax collector, all being officers of Limestone county; the purpose of said suit being to restrain appellees from collecting or attempting to collect taxes on certain oil royalties of the value of $30,870, owned by appellants. The case was tried before the court without the aid of a jury, and judgment rendered in favor of appellees. At the request of appellants, the court filed findings of fact and conclusions of law. The facts of the case will be more fully stated in the course of this opinion.

Under appellants' first assignment, they contend that, by the execution of the leases in this case, all of the oil and gas under the lands leased became the property of the lessees and should have been assessed against the lessees, and no part of same is assessable against the lessors. The tract of land in question is 120 acres, composed of several small tracts leased to different parties. The leases in question are the usual "88 producer's special-Texas form," and each lease contains the following provisions:

"That the lessor, for and in consideration of $3,393 cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept, and performed, have granted, demised, leased, and let, and by these presents does grant, lease, and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and building tanks, power stations, and structures thereon to produce, save, and take care of said products, all that certain tract of land" (describing same).

Also:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil and gas, or either of them, is produced from said land by the lessee. In consideration of the premises, the said lessee covenants and agrees: (1) To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises."

Said lease also contains the usual covenants to commence drilling a well in a certain time, and, on failure to so do, the lessee will pay a certain rental, which shall operate to extend the time for commencing a well for twelve months, etc., and, if a dry hole is found, lessee will commence another well in twelve months, or extend the lease by payment of rentals, etc. The leases and dates covering the several small tracts constituting the 120 acres were as follows: One to Montague July 5, 1924; one to Godley Oil & Gas Company March 7, 1924; one to Megarity December 2, 1920; one to the Gulf Production Company December 3, 1921; and one to A. E. Humphreys October 25, 1924—all said leases being similar to the one above set out. Appellants sold a one-half interest in the one-eighth royalty, which left them owning the surface of the 120 acres and a one-sixteenth royalty interest in the minerals in and under said 120 acres. On the trial of this case the following agreement was introduced in evidence by counsel for both sides:

"It is agreed by and between the parties plaintiff and defendant herein that the value of plaintiffs' said property situated in Limestone county, Tex., on January 1, 1925, was the sum of $32,700, which included the land and royalty. It is further agreed that within the time

and manner contemplated by law, the tax assessor of Limestone county approached plaintiff to render his property, and that plaintiffs did render the surface of the property described in plaintiffs' petition, but did not render the royalty interest, and at the time there was indorsed upon the rendition sheet executed by plaintiffs the words, 'Not ready to render royalty'; that thereafter, and within the time and manner provided by law, and after due. and proper notice to the plaintiff herein, the commissioners' court of Limestone county, Tex., sitting as a board of equalization, duly and legally organized and qualified and acting as such, came to consider the valuation of plaintiff's property, and assessed the royalty interest owned by plaintiff in the lands described in plaintiffs' petition at $30,870, which added to the land valuation made $32,700 assessed against plaintiffs' said property, and which action by the board of equalization was duly entered on the tax rolls of Limestone county, Tex.; and to which action plaintiffs then and there objected; that the amount for which said property was so assessed represented the true and reasonable market value and the taxable value thereof on the 1st day of January, A. D. 1925; that plaintiffs are and were, on and prior to January 1, 1925, the sole owners in fee simple of the surface of the land and premises described in plaintiffs' original petition and of said one-sixteenth royalty to which they are entitled under and by virtue of the oil and mineral leases executed by. plaintiffs in and upon said land to other parties and which have been introduced in evidence."

"[Signed]   Reed & Cannon,
          "Robt. M. Lyles,
              "Attorneys for Defendants.
     "N. T. Stubbs,
          "Attorney for Plaintiffs."

[1] Article 7146, Revised Statutes 1925, provides:

"Real property for the purpose of taxation, shall be construed to include the land itself, * * * and all the rights and privileges belonging or in anywise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

[2, 3] Appellants owned the surface of the 120 acres, which they rendered for $1,830. They also owned a one-sixteenth or royalty interest in the minerals in or under said land of the value of $30,870, and appellants agreed, as shown by the above agreement of record, "that the value of plaintiffs' said property (120 acres) situated in Limestone county, Tex., on January 1, 1925, was the sum of $32,700, which included the land and royalty." This royalty interest was certainly not the property of the lessee, but was the property of appellants, and was a mineral right or privilege "belonging" or "appertaining" to said 120 acres of land. Oil and gas in place are minerals and realty subject to ownership, severance, and sale while embedded in the sands or rocks beneath the earth's surface. The effect of the leases executed by appellants to the lessees in this case was to sever said minerals in

or under said land from the remainder of the land, and to, in substance, vest in said lessees seven-eighths of said minerals, and, in effect, leaving in appellants,' severed from the remainder of the land and subject to sale and separate taxation, one-eighth or royalty interest in said minerals, to be delivered when mined and brought to the surface. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607; Humble Oil, etc., v. Andrews (Tex. Civ. App.) 285 S. W. 894 (writ refused); Waggoner et al. v. Wichita County et al., 47 S. Ct. 271, 71 L. Ed. ——. In the case of Stephens County v. Mid-Kansas Oil & Gas Co., supra, the lease provided that the lessee at his option should pay the stipulated royalty in oil or cash. It thus conferred on the lessee the essentials of ownership to the entire interest in the oil with unrestricted power of appropriation and disposition of the oil, but such is not the case here, where the lessee agreed to deliver the one-eighth or royalty oil to the lessors. But the same course of reasoning employed in the Stephens County Case, applied to the terms of the lease in this case, leads to the conclusion that the ownership of the royalty oil in this case remained in the lessors, who retained the power of disposition and the right to receive possession. The severance being accomplished as above stated, appellants had two estates in fee simple; one being one-eighth of the minerals in place in said 120 acres, and being realty, and the other in the surface of said land. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 299, 29 A. L. R. 607, and cases cited. Appellants sold and conveyed one-half of their one-eighth interest in said mineral or royalty interest, which left them one-sixteenth mineral or royalty interest. This interest they admitted was worth $30,870. They rendered their interest in the surface of said land at $1,830, but refused to render their mineral or royalty interest. The board of equalization was correct in adding thereto the admitted value of their mineral or royalty interest, making the total value of their interest in said land $32,700, and the trial court was correct in so holding. We overrule this assignment.

[4, 5] Under several other assignments appellants contend the royalty interest owned by them on January 1, 1925, was personal property, and should have been valued separately from the land, and that neither the assessor nor the board of equalization had the authority to add the valuation of the royalty interest to the value of the land, and that the board of equalization cannot legally add property to the rendition, but their authority is limited to raising or lowering the value of the property rendered. The record shows that appellants, in the rendition of their property

(293 S.W.)

to the assessor, rendered the 120 acres of land at $1,830, but refused to render their royalty interest in said land, contending the same was not subject to taxation, at which time, as provided by article 7192 of our Statutes, the assessor noted on said rendition, "Not ready to render royalty." When the commissioners' court, as a board of equalization, convened, said board, appellants being present and having been heard, fixed the value of appellants' royalty interest on January 1, 1925, in said 120 acres of land at $30,870, and added same to the value of said land, $1,830, as rendered by appellants, making the value of said 120 acres, including said royalty interest in same, $32,700. We think, under the authority of articles 7190, 7192, and 7193, Revised Statutes of 1925, the tax assessor had the right to assess appellants' royalty interest in said land, as the court found he did do, at $30,870. We think, also, under the authority conferred upon them by articles 7206 and 7212, the board of equalization had the right to correct the rendition made by appellants so as to make same include the value of said royalty interest, as was done in this case; and, as stated above, we think said royalty interest was a right or privilege belonging or appertaining to said 120 acres of land, within the purview of articles 7146, Revised Statutes of 1925, and was properly treated as an interest in said realty by adding its value to the value of the surface of said land. But, if said royalty interest was personal property and its value being added to the value of the realty was error, as contended by appellants, as no tax lien was fixed or foreclosed by the judgment rendered herein, such error was harmless and affords no grounds for complaint by appellants. These assignments are overruled.

We have considered all of appellants' assignments, and, finding no reversible error, overrule same, and affirm the judgment of the trial court.