1062

F. O. BURKET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. O. BURKET, TRUSTEE FOR FLAVIUS O. BURKET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36963, 36962.    Promulgated February 7, 1930.

*J. D. M. Crockett, Esq., L. A. Crawford, Esq.,* and *O. Q. Claflin, Esq.,* for the petitioners.

*L. A. Luce, Esq.,* and *P. M. Clark, Esq.,* for the respondent.

## OPINION.

LANSDON: The single question raised by the pleadings is whether certain royalty interests in an oil and gas lease were acquired by verbal grant on or before August 7, 1922, or on December 20, 1922, when a written assignment was executed. The respondent has determined that the interests were acquired on December 20 and has allowed depletion deductions based on a value fixed by the first discovery thereafter on January 30, 1923. The petitioners contend that they acquired the royalty interests on or before August 7,

and that depletion should be computed on a value fixed by the discovery in September, 1922.

Section 214 (a) (10) of the Revenue Act of 1921 provides:

That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: *Provided further*, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter: *And provided further*, That such depletion allowance based on discovery value shall not exceed the net income, computed without allowance for depletion, from the property upon which the discovery is made, except where such net income so computed is less than the depletion allowance based on cost or fair market value as of March 1, 1913; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

The royalty interests herein involved were acquired without cost after March 1, 1913, and the basis for depletion must be the fair market value at the date of discovery as provided in the above section. We have heretofore held that in order to use the discovery value as a basis for depletion deductions the discovery must have been made " by the taxpayer " after he acquired the property. *Boucher-Cortright Coal Co.*, 7 B. T. A. 1; *Evangeline Gravel Co.*, 13 B. T. A. 101.

The date of transfer of the royalty interests involved in this proceeding depends upon the nature of such interests and whether they may be transferred orally. The decisions of this Board and of the courts hold uniformly that oil and gas leases and the assignments of royalty interests convey no title to the oil and gas in place. *J. T. Browning et al.*, 16 B. T. A. 485; *John T. Burkett*, 7 B. T. A. 560; affd. 31 Fed. (2d) 667; certiorari denied, 280 U. S. 43A; *Henry L. Berg et al.*, 6 B. T. A. 1287; *Lynch* v. *Alworth-Stephens Co.*, 267 U. S. 364; *United States* v. *Biwabik Mining Co.*, 247 U. S. 116; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503. The Supreme Court, however, in discussing the nature of the interest created by an oil and gas lease, points out in *Lynch* v. *Alworth-Stephens Co.*, *supra*, that it is a very real and substantial property interest. The court states:

It is, of course, true that *the leases* here under review did not convey title to the unextracted ore deposits, *United States* v. *Biwabik Mining Co.*, 247 U. S 116, 123; but it is equally true that *such leases*, conferring upon the lessee the exclusive possession of the deposits and the valuable right of removing and reducing the ore to ownership, created a very real and substantial interest therein. See *Hyatt* v. *Vincennes Bank*, 113 U. S. 408, 416; *Ewert* v. *Robinson*, 289 Fed. 740, 746–750. And there can be no doubt that such an interest is property. *Hamilton* v. *Rathbone*, 175 U. S. 414, 421; *Bryant* v. *Kennett*, 113 U. S. 179, 192.

See also *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190, and *Rich* v. *Donaghey* (Okla.), 177 Pac. 86.

Bonuses, rentals, and royalties provided for in oil and gas leases are payments for the use of the mineral resources of the land. *Work* v. *United States*, 261 U. S. 352; *Wright* v. *Carter Oil Co.* (Okla.), 223 Pac. 835. Rentals are payments for the privilege of going upon the land to prospect for oil and gas and for delay in beginning operations. Royalty refers to a certain percentage of the oil and gas produced or to so much per gas well developed. Thornton's Law of Oil & Gas; 4th ed., sec. 253. Royalty which has accrued is personal property and may be assigned without creating any interest in the lease or land. *Kendall* v. *Ewert*, 259 U. S. 139; *Warren* v. *Boggs* (W. Va.), 97 S. E. 589; *Central Kentucky Natural Gas Co.* v. *Stevens* (Ky.), 120 S. W. 282. There is, however, a difference between an assignment of " royalty " and an assignment of a " royalty interest " under an existing lease or in the land. A " royalty interest," which is the right to receive royalties to accrue in the future, is an interest issuing out of the land, and a part of the lessor's estate. *United States* v. *Noble*, 237 U. S. 74; *Amalgamated Royalty Oil Corporation* v. *Hemme* (C. C. A., 8th Cir.), 282 Fed. 750, 765; *Ferguson* v. *Steen* (Texas), 293 S. W. 318; *McKernon* v. *Josey Oil Co.* (Okla.), 233 Pac. 451; *Wright* v. *Carter Oil Co.* (Okla.), *supra; Hagan Co.* v. *Norton Coal Co.* (Va.), 119 S. E. 153; *Miller* v. *Sooy* (Kans.), 242 Pac. 140.

In *United States* v. *Noble, supra,* an Indian allottee of lands under a patent which provided that the allotment should be inalienable for a period of 25 years had assigned his " right, title, and interest in and to the royalty " under certain mining leases. Suit was instituted to cancel the assignments upon the ground that they were in violation of the restriction imposed by Congress against alienation. In holding that the assignments were invalid, the Supreme Court stated:

We may first consider the assignments of rents and royalties. Under his patent, the allottee took an estate in fee, subject to the limitation that the land should be " inalienable for the period of twenty-five years " from date. * * * The comprehensiveness of the restriction was modified only by the power to lease; and while the allottee could make leases, as provided in these acts, they gave him no power to dispose of his interest in the land subject to the lease,

or of any part of it. The rents and royalties were profit issuing out of the land. When they accrued, they became personal property; but rents and royalties to accrue were a part of the estate remaining in the lessor. As such, they would pass to his heirs, and not to his personal representatives. 1 Washburn on Real Property, *337; *Wright* v. *Williams*, 5 Cow. 499. It is true that the owner of the reversion, when unrestricted in his right to convey, may sever the rent and grant it separately, but this is by virtue of his freedom to deal with the estate in the land. 2 Bl. Com. *176.

It necessarily follows that the allottee in the present case having no power to convey his estate in the land could not pass title to that part of it which consisted of the rents and royalties. It is said that the leases contemplated the payment of sums of money, equal to the agreed percentage of the market value of the minerals and thus that the assignment was of these moneys; but the fact that rent is to be paid in money does not make it any the less a profit issuing out of the land. * * *

The lessor's interest under an oil and gas lease is analogous to the lessor's interest under a general farming lease. In each instance there is a letting of the premises for a particular use with a reservation of rent. It has long been established that an assignee of rent, without the reversion, under a lease for years may have any remedy for collecting the rent which the lessor had. Thompson on Real Property, sec. 1354; Gilbert on Rents, sec. 165; *F. Gross & Co.* v. *Chittim* (Tex.), 100 S. W. 1006; *Haywood* v. *O'Brien* (Iowa), 3 N. W. 545; and *Lufkin* v. *Preston* (Iowa), 3 N. W. 58. The right of a landlord to transfer a part or all of his estate in the land is an incident to his right of property and necessary to the full enjoyment thereof. Thompson on Real Property, sec. 1345. And so it is with a lessor under an oil and gas lease. He may assign a part or all of his interest under the lease without parting with his reversion. *Hagan Co.* v. *Norton Coal Co., supra; McKernon* v. *Josey Oil Co., supra;* and Thornton's Law on Oil and Gas, sec. 262. Such an assignment creates an interest issuing out of lands and to be valid must be in writing under section 33–105 of the Revised Statutes of Kansas (1923), which provides:

*Leases or estates exceeding one year in duration.* No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law.

The parol assignments on August 7, 1922, could operate to create no interest in the land and at most were assignments of the "royalty" after it was severed from the land and became personal property. *Robinson* v. *Smalley* (Kans.), 171 Pac. 1155; *White* v. *Green* (Kans.), 173 Pac. 974; and *Miller* v. *Sooy* (Kans.), 242 Pac. 140. An assignment of accrued royalties would not entitle petitioners to depletion deductions in any amount. Such deductions

are allowed by the statute to compensate for the diminution of the mineral reserve caused by the extraction and removal of minerals therefrom and until an interest in such mineral reserve is acquired by a taxpayer no right to depletion deductions exists.

On December 20, 1922, each of the petitioners acquired one-third of the royalty interest under the existing oil and gas lease and the respondent has correctly allowed deductions from their respective incomes on account of depletion. I. T. 1920, C. B. III–1, 188. Cf. *J. V. Leydig*, 15 B. T. A. 124, and *William I. Paulson et al.*, 10 B. T. A. 732.

Reviewed by the Board.

*Decision will be entered for the respondent.*

MARQUETTE, SMITH, STERNHAGEN, TRAMMELL, PHILLIPS, VAN FOSSAN, and MURDOCK concur in the result only.